[Cite as *Wells Fargo Bank v. Blenman*, 2015-Ohio-3175.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| WELLS FARGO BANK, N.A., | : | |
|  | | CASE NO. CA2015-01-005 |
| Plaintiff-Appellee, | : | |
|  | | O P I N I O N |
|  | : | 8/10/2015 |
| - vs - | | |
|  | : | |
| CLAUDE BLENMAN, et al., | : | |
| Defendants-Appellants. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2013-11-3211

Thompson Hine LLP, Scott A. King and Terry W. Posey, Jr., Austin Landing 1, 10050 Innovation Drive, Suite 400, Miamisburg, Ohio 45342, for plaintiff-appellee

Lerner, Sampson & Rothfuss, Jennifer N. Templeton, P.O. Box 5480, Cincinnati, Ohio 45201, for plaintiff-appellee

Claude Blenman, 8237 Coral Bell Court, Middletown, Ohio 45044, defendant, pro se

McFadden & Freeburg Co., L.P.A., Monica E. Russell, 225 East Liberty Street, Medina, Ohio 44256, for defendant-appellant, Victory Community Bank

Donald P. McFadden, 6690 Beta Drive, Suite 320, Mayfield Village, Ohio 44143, for defendant-appellant, Victory Community Bank

**S. POWELL, P.J.**

{¶ 1} Defendant-appellant, Victory Community Bank (Victory), appeals from the

decision of the Butler County Court of Common Pleas finding Victory failed to meet its burden of proof establishing that it held a superior lien priority position to any portion of the mortgage held by plaintiff-appellee, Wells Fargo Bank, N.A. (Wells Fargo). For the reasons outlined below, we affirm.

{¶ 2} On August 3, 2005, Claude Blenman signed a promissory note in favor of Victory in the amount of $359,650, plus interest at a rate of 5.875 % per annum for a term of 30 years. Victory indorsed the note to Ohio Savings Bank, which indorsed the note in blank. That same day, in order to secure the note, Blenman executed a mortgage to Mortgage Electronic Registration Systems, Inc. (MERS). The mortgage encumbered certain real property located at 8237 Coral Bell Court, Liberty Township, Butler County, Ohio. The mortgage was then recorded on August 11, 2005. MERS subsequently assigned the mortgage to Wells Fargo on February 7, 2008.

{¶ 3} On November 2, 2006, Blenman established a home equity line of credit with Victory by signing a credit agreement and disclosure. Under the credit agreement, Victory agreed to loan Blenman up to $73,000, with interest, for a term of 15 years. The credit agreement was secured by an "open-end mortgage" on the Coral Bell Court property in the amount of $73,000, which was executed by Blenman in favor of Victory. The open-end mortgage was recorded on December 6, 2006.

{¶ 4} On August 25, 2010, Blenman entered into an agreement with Wells Fargo that modified the terms of the note and mortgage that secured it. As part of this so-called loan modification agreement, Blenman and Wells Fargo agreed that (1) the principal sum due on the note would be increased from $357,725.60 to $398,572.52; (2) Blenman would thereafter pay interest in the amount of 5.875 % on the increased amount; and (3) Blenman's monthly payments to Wells Fargo would increase to $2,545.15. It is undisputed that this agreement was never recorded.

{¶ 5}   On November 22, 2013, Wells Fargo filed a foreclosure action against Blenman after he defaulted on his obligations under the note and mortgage.  As part of this complaint, Wells Fargo sought judgment against Blenman in the amount of $381,454.99, plus interest at the rate of 5.875% per year.  Wells Fargo named Victory as an additional defendant in the action, alleging Victory may claim an interest in the subject property by virtue of its own mortgage on the property.  In addition, Wells Fargo requested that its mortgage be adjudged a valid first lien upon the property, that its mortgage be foreclosed and the property ordered sold, that it be paid out the proceeds of such sale, and that "all other defendants herein be required to set up their liens or interests in said real estate or be forever barred from asserting same."

{¶ 6}   On December 23, 2013, Victory filed an answer and counterclaim to Wells Fargo's complaint, as well as a cross-claim against Blenman.  In its counterclaim, Victory asked the trial court to find Wells Fargo's mortgage had priority over Victory's mortgage only as to the amount that would have been due under Wells Fargo's original mortgage as if no subsequent agreement between Blenman and Wells Fargo had occurred.  Specifically, Victory alleged it was entitled to priority over any "increased amount, value, equity or interest" due under the Wells Fargo's mortgage as a result of the supposed loan modification.  Victory also filed a cross-claim against Blenman in the amount of $56,445.66, plus interest, resulting from his defaulting on its mortgage and on his obligations under the credit agreement.

{¶ 7}   On May 1, 2014, while these claims were pending, Wells Fargo entered into another so-called loan modification agreement with Blenman.  Under the terms of this agreement, the principal sum due to Wells Fargo increased to $421,148.32, which included "unpaid amounts loaned to Borrower by Lender plus any interest and other amounts capitalized."  The interest rate under this agreement was set at 4.625%, which lowered Blenman's monthly loan payments to $1,927.30, and the loan's maturity date was extended

from August 1, 2035 to May 1, 2054. Unlike their previous agreement, this agreement was recorded on June 24, 2014. As a result of this new agreement, Wells Fargo filed a motion to dismiss its complaint for foreclosure, which was granted, and the case proceeded on Victory's claims against Wells Fargo and against Blenman.

{¶ 8} On June 27, 2014, Victory moved for summary judgment on its claim against Wells Fargo and for default judgment against Blenman. In response, Wells Fargo alleged that Blenman owed it over $420,000, plus interest, as well as court costs, advances, and any other charges allowed by law. Wells Fargo also asserted, as an affirmative defense, its rights under R.C. 2329.20 to have its senior lien remain attached to the subject property after any foreclosure sale, and stated that it would consent to any judgment that recognizes its first lien and sells the property subject to its lien. Consequently, Wells Fargo requested that the property "be sold subject to the first mortgage lien held by [Wells Fargo] in accordance with its rights as first mortgage lien holder." To this, Victory alleged Wells Fargo was merely seeking "to steadily increase the amounts due it, without adjudication, affidavit or proof shown."

{¶ 9} On August 14, 2014, the trial court issued a decision and entry denying Victory's motion for summary judgment on its claim against Wells Fargo. In so holding, the trial court rejected Victory's argument that when Wells Fargo "entered into the loan modification agreements, Victory's lien became of higher priority than the additional principal capitalized into Wells Fargo's original loan." Thereafter, on December 11, 2014, the trial court issued a judgment entry granting Victory default judgment on its claim against Blenman in the amount of $56,445.66, with interest at 3.25 %. As part of this entry, the trial court further found Wells Fargo's mortgage "is a prior lien as defined in O.R.C. Section 2329.20 and that the Judgment Entry rendered herein will not affect said mortgage or obligation secured thereby and that when said property is to be sold it will be sold subject to the

- 4 -

mortgage of defendant, Wells Fargo." (Emphasis sic.) The trial court then incorporated its previous decision and entry denying Victory's motion for summary judgment into its judgment entry, included Civ.R. 54(B) language indicating there was no just reason for delay, and found its entry was a final and appealable order.

{¶ 10} Victory now appeals from the trial court's decision finding its mortgage did not take priority over any portion of Wells Fargo's mortgage, raising one assignment of error for review.

{¶ 11} IT WAS ERROR FOR THE TRIAL COURT TO DENY VICTORY'S MOTION FOR SUMMARY JUDGMENT AGAINST WELLS FARGO.

{¶ 12} Before addressing Victory's single assignment of error, we note that "'it is well-established that an order must be final before it can be reviewed by an appellate court. If an order is not final, then an appellate court has no jurisdiction.'" *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶ 9, quoting *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20 (1989). As a general rule, "[a]n order denying a motion for summary judgment is not a final appealable order." *State ex rel. Overmeyer v. Walinski*, 8 Ohio St.2d 23, 23 (1966); *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, ¶ 11. However, pursuant to the Ohio Supreme Court's decision in *Queen City S. & L. Co. v. Foley*, 170 Ohio St. 383 (1960), "a journalized order determining that the mortgage constitutes the first and best lien upon the subject real estate is a judgment or final order from which an appeal may be perfected." *Id.* at paragraph one of the syllabus.

{¶ 13} Although couched under a claim alleging the trial court erred by denying a motion for summary judgment, the crux of this matter is whether the trial court erred by finding Wells Fargo held the first and best lien over Victory's own mortgage in light of the two so-called loan modification agreements. To that end, while acknowledging that Wells Fargo's original mortgage recorded on August 11, 2005 has priority over Victory's own mortgage

recorded on December 6, 2006, Victory asserts that the trial court erred by finding its mortgage did not have priority over the two subsequent agreements entered into by Wells Fargo and Blenman, as those agreements represent advances of additional principal that create new indebtness for which its mortgage should not be subordinate.

{¶ 14} In response, Wells Fargo argues that the two agreements it entered into with Blenman after Victory recorded its mortgage maintain priority in that they are governed by R.C. 5301.233. Pursuant to that statute:

> In addition to any other debt or obligation, a mortgage may secure unpaid balances of advances made, with respect to the mortgaged premises, for the payment of taxes, assessments, insurance premiums, or costs incurred for the protection of the mortgaged premises, if such mortgage states that it shall secure such unpaid balances. A mortgage complying with this section is a lien on the premises described therein from the time such mortgage is delivered to the recorder for record for the full amount of the unpaid balances of such advances that are made under such mortgage, plus interest thereon, regardless of the time when such advances are made.

{¶ 15} There is no dispute that Wells Fargo's mortgage contains language indicating it may secure unpaid balances of advances made, with respect to the mortgaged premises, for the payment of taxes, assessments, insurance premiums, or costs incurred for the protection of the mortgaged premises. In turn, the only issue currently before this court is whether evidence was presented to prove the two subsequent agreements between Wells Fargo and Blenman included something other than unpaid balances of advances made, plus interest thereon, as well as advances for taxes, assessments, insurance premiums, or costs incurred for the protection of the mortgaged premises. In other words, was there sufficient evidence presented by Victory to establish the two so-called loan modification agreements entered into by Wells Fargo and Blenman represent advances of additional principal that creates new indebtedness that would remove Wells Fargo's mortgage from the purview of R.C. 5301.233? After a thorough review of the record, we find that there was not.

{¶ 16} In reaching this decision, we note the long standing principle that where the record shows the priorities of mortgages, such as the case here, "the burden of proof is upon the one asserting a different priority to prove it, and where the evidence leaves the point doubtful, the priorities will be adjudged according to the record." *Aston v. Weiss*, 9th Dist. Summit No. 621, 1923 WL 2671 (Mar. 9, 1923). In this case, however, the record contains no evidence that either of the two so-called loan modification agreements between Wells Fargo and Blenman contained anything other than what is permitted under R.C. 5301.233, i.e., unpaid balances of advances made, with respect to the mortgaged premises, for the payment of taxes, assessments, insurance premiums, or costs incurred for the protection of the mortgaged premises.

{¶ 17} That said, we note that there is currently no complaint for foreclosure pending by Wells Fargo, whereas Victory has a default judgment in foreclosure against Blenman. Procedurally, the denial of a motion for summary judgment generally leaves the issues raised as part of a summary judgment motion subject to litigation at trial. In turn, should Victory proceed with its foreclosure, Victory will then need to produce sufficient admissible evidence as to its alleged priority at a full evidentiary hearing on the matter. Therefore, just as the trial court found in issuing its decision denying Victory's motion for summary judgment, because Victory failed to satisfy its burden of proof indicating its mortgage had priority over any portion of Wells Fargo's mortgage, Victory's single assignment of error is overruled.

{¶ 18} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.